I thank counsel for their patience. The court welcomes a group of students to observing the second argument. The case is Hussain v. Campbell Soup Company, case 24-6041. Counsel, good morning. Good morning. My name is James Pazos. I represent the appellant, Syed Hussain. And I'd like to reserve five minutes, please. Sure. At some point, the district court ordered that potatoes be sent to chambers. And I was going to bring those potato chips here for each of you. But then I decided I didn't really know the laws against gifts, so I decided against it. But I was thinking about you guys. Since it's the Friday at the end of the calendar, we could have probably used a snack. But go ahead. This is a 12b-6 motion regarding deceptive labeling. As you know, the same principles, basic principles, apply. Whether a package is deceptive is typically an issue of fact and is typically not appropriate at the pleading stage. However, if the advertising itself makes it impossible for plaintiff to prove that the packaging is deceptive, then dismissal is appropriate. And that decision is made by the judge using his experience or her experience and common sense. And it's interesting because that's the critical point. When the judge makes that decision of dismissal, that common sense has to be common. And the other rule is that the factual allegations are deemed true, and they're construed in favor of the plaintiff, nonmovable. Counsel, can I interrupt? One question I have. Why are you arguing that the front of the package is not simply ambiguous, but instead plausibly misleading? How is it that you're arguing that? How is the argument that the front label is plausibly misleading? Correct. And not just ambiguous, therefore requiring us to turn the package around. Correct, yes. And we believe that's true. And in our central, the plaintiff's central allegation and claim in the case is that the air fried method of preparation, it means by definition it's not deep fried in oil. So when it says air fried, that's a representation that it's not deep fried in oil. Is that plausible? I mean, it says air fried, kettle cooked, air finished. So in the back obviously then clarifies there's two steps to the manufacturing process. That's correct. And so that's where we disagree with the district court when the district court gripped on to the phrase kettle cooked and said, well, that's deep fried in oil, so game over. We don't believe that that necessarily a reasonable consumer would conclude that if you accept the premise that the method in which air fried uses is little or no oil. And we allege the definition from dictionary.com, which we believe is in accordance with what a reasonable consumer would view. I mean, what about the back, though, that has like a vat of something and it's potato chips, so most people would probably think it's oil, right? And that's the point really what the justice is bringing up. You don't even get to the back if there's a plausible ambiguity based on the front label. If the front label is plausibly misleading to consumers, the court typically does not consider the back label at the pleading stage. Let's say that we do get to the back. What about Judge Press's question? There is a liquid going into a kettle. Why would a reasonable consumer believe that that's water versus oil, I guess? Well, and that's kind of our central claim. If air fried really means little or no oil and not deep fried, how could you construe kettle cooked or anything on this package that says it's deep fried? So the reasonable consumer has to interpret whatever other language is below it consistent with the interpretation of this product as air fried. And so how do I prove that at the pleading stage? It's difficult. This is why we actually included in the brief something I wouldn't typically do, but we're kind of backed against the wall of the YouTuber who's doing a product review of this product. And this is not someone who's walking by, sees a bag of chips in the store and says, air fried? Oh, not deep fried. That must be better. I don't want deep fried, and grabs it. Here's a consumer that's actually doing a product review, looking at this product from top to bottom, and he sees all this. He sees the front, he sees the back label, and he says, wow, does that mean it's boiled or is it fried? And he tells the audience, somebody tell me what's going on here. That's after someone scrutinizing this label. And as the white side talks about, this isn't a product that's necessarily going to be scrutinized, not a specialty product really. They're potato chips. So I think that that makes the point that it is at least plausible for a consumer, when it sees air fried, and that means it's not deep fried in oil, and sees kettle cooked, that there's another interpretation. Whether that's boiled, whether that's steamed, whether there's a kettle process that uses air fried, maybe that's not clear. But what they still are going to interpret is this product is not deep fried. Otherwise, it makes no sense. That's like saying you have a representation that says it's not deep fried, and underneath it says it's deep fried in oil. What about, I mean I thought the allegation was that it was essentially oil free and therefore healthier, but the ingredient list does list oil. The point is not that it doesn't have oil. The gravamen of our allegation, and it's in the paragraph 7 and it's in paragraph 27, is that it's not deep fried in oil. Air frying does, can use either no oil. It's kettle cooked, right? That's what it says. That's what it says. And the question is, does kettle cooked categorically mean deep fried in oil? And we maintain it does not. The YouTuber, all we can do is get evidence, but we don't have the opportunity to get evidence. So we presented this YouTuber. He didn't see it as kettle cooked meant deep fried. My client didn't see it like that. So we want an opportunity to at least gather evidence. And, you know, it's all anecdotal at this point because I'm arguing against common sense at the pleading stage. But I asked many young people, including my daughter, who's 18, and I asked, what do you think about this? Kettle cooked, chips, what is that? And they said, kettle? Like a tea kettle. So it's steamed. Different generations. I think of it differently. I know I'm old enough to remember ma and pa kettle with the kettle. But that's not necessarily the target consumer here. And I think this YouTuber shows that. And I think that when a consumer is walking the aisle and says air fried and sees something that says vaguely kettle cooked and air finished, they're going to interpret that consistently, well, it's air fried. And you can see that in the YouTuber video, too. It's comical. At the beginning he looks at the front of the label and he says kettle brand, air fried, and then it was Himalaya chips was the name. He skips over the second part, kettle cooked and air finished, and he repeats air fried, air fried, air fried. And you have a picture in the grocery store of this product. And the grocery store doesn't say kettle cooked and air finished. It says air fried. That's the impression that's given and left. And the question is, can I allege that, plausibly allege that a consumer is going to look at kettle cooked and say, I'm going to interpret that consistent with not deep fried, so it must be boiled, must be steamed. It could even be a marketing jingle. We put that in there. And even the district court actually, in reading back, it was kind of humorous. When he's doing his analysis, he sees kettle brand at the top. And he says, well, that just tells you right there there's a kettle involved. Well, it really doesn't because kettle brands actually sells baked chips that are not cooked in a kettle. They're not deep fried. So here there is in the back a picture of what looks like a kettle. It looks like a kettle. And do they cook it in those types of kettles? No. Does anyone think that they cook it in those type of kettles? No. So if you get to the back page, it still doesn't really clarify how that's being cooked. And you have to ask yourself, if it's so clear that it's cooked in oil, why don't they say kettle cooked in oil, deep fried in oil? Precisely because they don't want that out. They want to try to conceal that point because it makes the product less attractive. And, I mean, I think that that's our position. And there's nothing in the back that says deep fried in oil, doesn't say it anywhere. And as long as if the front label is deceptive, you don't even get to the back label. So how do you deal with the 30 percent less fat? Obviously they're saying there's fat and it's 30 percent less in our regular chips. It's disclosing that there's some fat. True? It does disclose that there's 30 percent less fat. That is correct. So where is the fat coming from, if not oil? To be honest, I don't even know. I don't know. If I was buying these chips, I don't think I'd have that level of analysis. I don't think my clients did. I was just assuming you had a garage full of these chips. I've got potatoes, they're just not the chips. Well, I've got to tuck myself in here. I understand the court's position. The white side made the point that these products are not highly scrutinized, like Manuka honey, for example, which is a specialty product. So it's very unlikely that a consumer is going to put the amount of analysis that we're putting in here on what's on this label. And even a consumer that was doing a review didn't put that much analysis, and he spent like 20 minutes on the label. We're really talking about a product that they come by and grab, and they say air fried, good. That's not deep fried. That's better. They have baked chips. The consumers are already prepared for this because we have baked chips. Baked chips are not deep fried. They're healthier. They have less fat. I don't know where the fat comes from in baked chips either. Well, I think basically whether you bake them or air fry them, you use some oil. I've not heard of anything that just straight out bakes it without oil or air fries it without oil. Less oil, I'll grant you. I'm sorry? I said less oil, I'll grant you. Yes, and that's the definition of air fried, little or no oil. So there's a little oil that comes within the definition. Really, the question is whether it's deep fried in a vat of oil. Did you want to save some time for rebuttal? I do, and yes. Thank you. Thank you. Dale Gialli for the Campbell's Company. May it please the Court. The Court should affirm dismissal, and there are numerous paths to do so based on this Court's terrific set of factors that a court should use to assess the plausibility of label false advertising on consumer packaged goods. And when we go through those cases, most of which are very recent, and walk through this label, we see that there's multiple, multiple ways in which the allegations of deception are found to be implausible. Counsel, just to be clear, we have to look at this from a reasonable consumer standard, correct? That's correct. And when we do, and we're looking at just the front label, blazoned across the front of this bag of chips is the words air fried. And it's very prominent. It's very big. In fact, it is the selling point of these chips. Wouldn't you agree? Well, Your Honor, I think the kettle brand, the fact that it is a kettle potato chip, that it is air fried, kettle cooked, air finished, sea salt vinegar. Right, but that's not what's, that's not, that's not how it's presented to the consumer. How it's presented to the consumer is in huge letters, blazoned across the front of this package. It says air fried. It's almost as big as I think the kettle, the label. But that's the, would you agree that that's the next sort of biggest lettering across the front of the packaging? Yes. And so why wouldn't that be misleading to a consumer? Just any person grabbing a bag of chips, just looking at this package, just nothing else. Look at the package. Air fried. How would they know that, in fact, it's not also cooked in a vat of oil? Sure. As far as the prominence, Your Honor, I think the recent case in Whiteside answers that question. In Whiteside, the products were labeled as plant-based wipes. And the statement that indicated 70% plus plant-based materials, I think, was what you might call mouse print, minuscule. And even so, the relative size is interesting. And the reason that that size is important is very prominently on this package, in large language and in the same text box, the same font color, is the statement kettle cooked, air finished. Well, it's not exactly right. It's not the same thickness. It's lighter in its prominence. Wouldn't you agree? Well, it's not lighter in its font color. It's the exact same font color. Prominence, absolutely. It is a smaller font. It looks to me to be about half the size of the font, but it is still in that text box. My point about bringing up Whiteside is the label statement on Whiteside that brought that label into the ambiguity that a consumer would need additional information in order to make a conclusion as to the thing that the consumer believes was deceptive, much smaller in Whiteside. And the court indicates that's plenty, plenty for the consumer to have seen or whatnot to dispel ambiguity or to raise questions in the consumer's mind. So there's just no question. Your argument is that in the way it looks, it's very clear that it is clear to the consumer that it is cooked in a vat of oil, is what you're saying. By looking at this front of the chips, they are cooked in a vat of oil. That's what a consumer is going to see from the front of this package. Okay, I think that is accurate, but that's not what I'm arguing, Your Honor, because I don't know that that's the standard under which these deceptive claims are assessed. The way that deceptive claims are assessed is, would the reasonable consumer need additional information before they made a conclusion that plaintiff made here that this is not cooked in oil? That's what plaintiff's assertion is in this case. And there's simply no way that, based on what the front of PAC says here, that the reasonable consumer would come to that conclusion. And so what the case law teaches is if the reasonable consumer needs additional information, which, as I'm saying, is the case, now the defendant has the ability to bring to the Court's attention all parts of the label in order to show that this consumer needed more information, here's the more information that consumer would have seen. And I take your point that they would have to then turn to the back of the package. I take your point as to that. But then the back of the package is supposed to clearly resolve the ambiguity. So explain to me, then, how the back of the package clearly resolves the ambiguity if there's some liquid pouring into a kettle and it doesn't say that it's being fried in oil. Sure, Your Honor. I'm going to answer the question, but I do want to make a point that I don't think it's my obligation to show that the back clearly resolves the error. But I'll get to that second. So right off the bat, the back of the PAC, and this is ER-018, the back of the PAC says, how do we make our air fried chips? And then it goes through, and first it says we batch cook them. Batch cook is another statement that means kettle cooked. Batch cook is known in the industry as batching potato chips in oil. It also, and it says cook them in kettles, it has the picture, of course, as the court has done. Do you really cook them in kettles? I'm sorry? Do you really cook them in kettles or do you cook them in vats? They're cooked in a larger, more industrial thing, which, by the way, the plaintiff knows because he brought that to the district court's attention in a video, exactly how kettle chips are made. So the plaintiff is not challenging it. They aren't cooked in those little cute vats. They're not, Your Honor. And plaintiff has made it clear that is not part of his deception theory. Okay. I'm just curious. We batch them. We batch cook them in kettles. So both batch cooking and kettle cooking are known. To the reasonable consumer? Absolutely. And that is what Moore teaches us. Moore v. Trader Joe's. Your Honor, we cited a case that indicates that kettle cooking is a generic phrase. Now, certainly it was in the intellectual property space, but the court went through and indicated that kettle cooking, batch cooking, is now a generically understood, commonly understood notion of how these chips are cooked, so much so that intellectual property could not be awarded as to that phrase. I don't know, counsel, but, you know, I'm a cook. And the person who goes to the store is going to look at this and see the pretty little kettle, and they're going to make decisions about whether the picture there in the back looks like oil or not. You don't cook with oil. You fry with oil. You cook. Perhaps you boil some things in a kettle. But to say that that establishes, that clarifies the ambiguity that was in the front, I'm not so sure that that is happening here. There's more, but there's more, Your Honor. First off, there's the spattering coming out of the kettle. It's not just liquid. It's spattering liquid, which certainly indicates that there is a hot boiling going on here of some sort of oil that is spattering. Second, the ingredient list lists oil. This is all on the back. But third, Your Honor, the nutrition facts list the fat content of this product, and total grams of fat, at least at ERO 18, that particular product is six grams. Eight percent of your daily value of fat is coming from one serving of these chips. I would like to go back to the front, Your Honor. The Court did note, and I think it's important, it's not just that this says kettle cooked, air finished. It's not just that the word kettle is the largest word on the entire front panel, and this is a potato chip. But it says 30 percent less fat. Thirty percent less fat also, of course, means it's got 70 percent of the fat of a normal chip. The reasonable consumer purchasing this product would understand, and we cite Moore v. Trader Joe's for that and also other decisions, where the reasonable consumer brings to the purchasing decision those things that the reasonable consumer knows. A reasonable consumer knows potatoes do not add fat to food. Oil adds the fat to the food. So if this product has 70 percent of the fat of a normal chip, obviously it's got oil in it, and, of course, the ingredient list and the nutrition facts prove that out by showing that it has both oil and fat. So the normal consumer is not going to start doing addition or subtraction or calculations in their head. When they see that, they're going to see what the front of the package is, blazoned across the front saying air fried, and then in the back there's a cute little kettle, and somehow that's supposed to convey that it's a vat of oil, even though it doesn't say that. Why didn't you just say that? Just say cooked and fried in oil. Well, I don't know that there's – My point is, is not putting that go towards the intent to, frankly, deceive the consumer. No, not at all. This is a product that is different than the regular product. This has an air frying step to it, and that air frying step provides 30 percent less fat. All of that is right on the front for any consumer to see. No math needed to see that. But it's quite clear from the front that this is not a manufacturing process that has one step. It has kettle cooked, air fried, and then that would lead to a question about how this product is manufactured, and in the back makes it quite clear there is two steps to it. The first is batch cooked in a kettle with some sort of liquid that's spattering, and then it is air finished – then it's air fried, as the back says. So we batch cook them in kettles. Then – the word then is right there. That obviously connotes that it's second to that and that it is actually a separate standalone step. Then air fry them for the light crispy crunch together with the ingredient list. My esteemed opposing counsel had mentioned multiple times a YouTuber. And I don't know if the Court has had the opportunity to review the YouTuber he's referring to, but it's at page 7 of his reply brief. He cites the YouTuber. The YouTuber proves the Campbell Company's point. The YouTuber looks at the label and looks at the front of the package, and what does he do? He asks the question, what does this mean? He fits exactly into Whiteside and McGinnity, i.e., that this is a label I need further information for. That YouTuber doesn't support plaintiff. He supports defendant. And by the end of the video, he seems to conclude to himself, well, it's a two-step process. And it's a two-step process, and he's actually excited about it because he thinks a chip that's been double cooked is going to be even better than a chip that's been single cooked. But the whole point of that YouTuber video, as I viewed it, is entirely in line with that these are not plausible allegations of deception because that YouTuber clearly had questions about what this front label meant, and by the time he's done, he indicates, oh, it's a two-step process. To Judge Mendoza's point, how do we know that first step has to do with oil? Because kettle chips, kettle cooked, batch cooking is all about this concept of fried in oil. That is what batch cooking and kettle cooking, how that's defined and how it's commonly understood. Defined by whom, counsel? Because when you look at the dictionary, you boil water in kettles. I guess defined by whom is my question. We cited the classic foods versus kettle foods case. That's at 468 F sub second 1181. And right there, the court said the kettle cooking process involves potato slices being fed directly into a vat of hot oil. That was a factual finding that the district court made along — and he did that because he heard from industry experts as to what kettle cooking is. And many industry experts came in and said this is now a generic phrase. People just understand how kettle cooking operates. Counsel, I think I just may disagree with you on that. When I think of a kettle, I think of, you know, those old westerns where you have a kettle burning over a fire. They're wonderful, one of my favorite movies. But they're usually cooking a stew or something. They're not frying some chips. They're cooking something like a meal that's not being fried and things. So I don't know. I guess maybe that's just my understanding of a kettle. And that's understood. Of course, we're looking at the reasonable consumer. And I think the record that is developed in the classic foods case is of the generic general populace with respect to kettle cooking, as opposed to any individual given person and what they might think cooking with a kettle means. But it does squarely address whether or not consumers understand the concept of kettle cooking and batch cooking. I'm taking you a little over your time, but let me see if there's further questions. I assume you keep a lot of these chips in your garage as well. Thank you, Counsel. They're delicious, Your Honor. Thank you very much. Let's hear rebuttal. Thank you, Your Honors. Let me talk about batch cooking. Counsel said something that's very interesting. Batch cooking is known in the industry. But we're not talking about the industry. We're talking about reasonable consumers. And if you read the case cited by Counsel about the generic process, that that's a generic process of kettle cooking, that was in the context of a brand dispute, whether kettle brand was a generic term or whether it was a branding term. That had nothing to do with what we're talking about here. That was a dispute regarding brand. Counsel also said something very interesting and talked about how if you need additional information to clarify something, go to the back page. But if you don't need additional information, you don't go to the back page. And, in fact, that's what Whiteside talks about. And in Whiteside, Counsel brought it up, the issue was on the front label, nature care, plant-based. And the district court sustained or granted the motion and the appellate court reversed. And the district court's view of that plant-based was that, well, it doesn't say it's wholly based on plants. It just says plant-based. And the Whiteside court said, well, as long as there's an interpretation that's the reasonable consumer would say, okay, that's consistent. It sounds like it's plant-based. It sounds like it's natural care. And that's a deceptive statement. You don't even go to the back. And I would submit that this case is more egregious than Whiteside. And precisely because the statement, air fried, is what the — air fried is a complete misstatement. It's not air fried. And that — But I think if you go down to kettle cooked, air finished, it's a two-step process that's communicated on the front label, wouldn't you say? And that's — and you can say that that's a two-step process. The real question, though, is, is one of those steps deep fried in oil? That's really our point. Is one of those steps deep fried in oil? It doesn't say deep fried in oil. It says kettle cooked, cooked in a kettle. And there's reasonable interpretation from a consumer that that is not deep fried in oil. And, in fact, that's the only logical interpretation. And that's why it's different than Whiteside. It's the only logical interpretation because the statement above says not deep fried in oil. And the consumer had — consumer, even if they look at it for a minute or two, they have to reconcile that. And they're going to reconcile that in a way that's consistent with air fried, which is the predominant representation. And I just want to point out this issue about — counsel mentioned the YouTuber. And I encourage the Court to look at that video because he didn't look at the front and say, oh, I'm confused. I need to look at the back. He looked at the front and he was convinced it's air fried. He looked at the back and then said, hmm, is this boiled or is this fried? I'm not sure about that. So the front label didn't cause any confusion or ambiguity. He was convinced it was air fried. Air fried, air fried, air fried. It was the back label that caused him to have some doubt. So I don't think we get there. That's our position. We've taken you a little over your time. Let me see if my colleagues have additional questions. Okay. I want to thank you very much for your presentation. Thank both counsel for the briefing and argument. This case is submitted. Thank you, Your Honors. We'll ask our students to quietly leave in the back to head on to the rest of their visit here. And we'll invite counsel up for the third case.
judges: THOMAS, BRESS, MENDOZA